**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DIANA J. LIOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:26-cv-02729-KSM |
| | ) | |
| CITIZENS BANK, N.A. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT CITIZENS BANK, N.A.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ........ 1

II. STATEMENT OF FACTS ........ 2

- A. Liott's Employment and Her Agreement To Arbitrate ........ 2

III. LEGAL STANDARD ........ 6

IV. LEGAL ARGUMENT ........ 8

- A. The Arbitrator, Not This Court, Must Decide Every Threshold Question ........ 8
- B. Even If The Court Looks Past Delegation, The Agreement Is Valid Under Pennsylvania Law ........ 9
- C. Every Claim In Liott's Complaint Falls Within The Agreement's Scope ........ 14
- D. The Court Must Stay These Proceedings Pending Arbitration ........ 15

V. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Eagle Outfitters v. Lyle & Scott Ltd.*,
584 F.3d 575 (3d Cir. 2009) .......... 9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 6

*Benedict v. Guess, Inc.*,
Civ. Act. No. 5:20-cv-4545, 2021 WL 37619 (E.D. Pa. Jan. 5, 2021) .......... 6

*Blair v. Scott Specialty Gases*,
283 F.3d 595 (3d Cir. 2002) .......... 12

*Bracy v. Macy's Retail Holdings, Inc.*,
No. 19-3825, 2020 WL 1953647 (E.D. Pa. Apr. 23, 2020) .......... 12

*Century Indem. Co. v. Certain Underwriters at Lloyd's*,
584 F.3d 513 (3d Cir. 2009) .......... 7

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
809 F.3d 746 (2016) .......... 9

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) .......... 6, 13

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) .......... 6

*Cornelius v. CVS Pharmacy Inc.*,
133 F.4th 240 (3d Cir. 2025) .......... 15

*Curtis v. Cintas Corp.*,
229 F. Supp. 3d 312 (E.D. Pa. 2017) .......... 15

*Davis v. Cintas Corp.*,
No. 2:18-cv-01200, 2019 WL 2223486 (W.D. Pa. May 23, 2019) .......... 12

*Doe v. Darden Restaurants, Inc.*,
Civ. No. 3:20-CV-00862, 2022 WL 265949 (M.D. Pa. Jan. 27, 2022) .......... 6, 10

*First Liberty Inv. Grp. v. Nicholsberg*,
145 F.3d 647 (3d Cir. 1998) .......... 7, 13

*Green Tree Fin. Corp. v. Randolph*,
531 U.S. 79 (2000) ........................................ 7

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
716 F.3d 764 (3d Cir. 2013) ........................................ 6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) ........................................ 7, 8

*Hopkins v. New Day Fin.*,
643 F. Supp. 2d 704 (E.D. Pa. 2009) ........................................ 15

*Hudak v. Citizens Bank, N.A.*,
No. 4:23-cv-40007-RGS (D. Mass. Feb. 10, 2023) ........................................ 11

*Juric v. Dick's Sporting Goods, Inc.*,
2020 WL 4450328 (W.D. Pa. 2020) ........................................ 10

*Keller v. Pfizer, Inc.*,
No. 1:17-CV-1883, 2018 WL 5841865 (M.D. Pa. Nov. 8, 2018) ........................................ 10

*Kitchengs v. Cintas*
Corp. No. 2, 759 F. Supp. 3d 562 (E.D. Pa. 2024) ........................................ 15

*Lloyd v. HOVENSA, LLC*
369 F.3d 263, 269 (3d Cir. 2004) ........................................ 15

*Lohm v. Citizens Securities, Inc.*,
No. 2:20-cv-01504-NBF (W.D. Pa. Dec. 11, 2020) ........................................ 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........................................ 6

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013) ........................................ 9

*Petrel v. Saber Healthcare Holdings, LLC*,
No. 2:24-cv-765, 2025 WL 1330117 (W.D. Pa. May 7, 2025) ........................................ 11

*Quilloin v. Tenet HealthSystem Philadelphia, Inc.*,
673 F.3d 221 (3d Cir. 2012) ........................................ 15

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) ........................................ 8, 12

*Rite Aid of Pa., Inc. v. United Food & Commercial Workers Union, Local 1776*,
595 F.3d 128 (3d Cir. 2010) ........................................ 7

*Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd.*,
559 Pa. 56, 739 A.2d 133 (1999) .......... 10

*Silfee v. Auto Data Processing, Inc.*,
696 F. App'x 576 (3d Cir. 2017) .......... 6

*Smith v. Spizzirri*
601 U.S. 472, 475–76 (2024) .......... 14, 15

*Stephenson v. AT&T Servs., Inc.*,
No. 21-0709, 2021 WL 3603322 (E.D. Pa. Aug. 13, 2021) .......... 11

**Statutes**

9 U.S.C. § 2 .......... 5, 6, 10, 13, 14

9 U.S.C. § 3 .......... 1

9 U.S.C. § 4 .......... 1

9 U.S.C. § 401 .......... 14

9 U.S.C. § 402 .......... 14

9 U.S.C. § 402(a) .......... 14

42 U.S.C. § 12101. .......... 1

Americans with Disabilities Act (ADA) .......... 1, 5, 13, 14

Equal Pay Act .......... 4, 5, 14

Federal Arbitration Act (FAA) .......... 1, 2, 3, 5, 6, 8, 10, 13, 14, 15

Sexual Assault and Sexual Harassment Act .......... 14

**Other Authorities**

Rule 6(a) .......... 8

Rule 12(b)(6) .......... 6

Defendant Citizens Bank, N.A. ("Citizens") respectfully submits this Brief in Support of its Motion to Compel Arbitration and Stay Proceedings pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3, 4.

## I. PRELIMINARY STATEMENT

Plaintiff Diana J. Liott ("Liott"), proceeding pro se, filed this employment-discrimination action in the wrong forum. When she electronically accepted Citizens' written offer of employment on July 20, 2022, her employment was expressly conditioned on her acceptance of Citizens' Mutual Agreement to Arbitrate Employment-Related Disputes (the "Arbitration Agreement"). Under Section 18 of the Arbitration Agreement, which governs all Citizens hires on or after May 18, 2018, Liott's acceptance of Citizens' offer of employment was itself acceptance of the Arbitration Agreement — no separate signature was required. She thereafter completed Citizens' annual Business Conduct and Ethics training in each of the two annual training cycles that occurred during her employment — on October 19, 2022 and again on February 3, 2023 — and, as part of each of those trainings, was provided a copy of the Arbitration Agreement and was required to complete an Ethics Attestation certifying — among other things — that she had read the Mutual Agreement to Arbitrate Employment-Related Disputes and understood that it applied to her. Liott achieved a perfect score of 100 on both course completions, indicating that she affirmatively agreed to each of those certifications. Citizens issued Liott a Certificate of Achievement upon each of those completions. At no point during her employment with Citizens did Liott seek to withdraw or challenge the Arbitration Agreement. Now, following her termination, she brings the very kinds of claims — disability discrimination, failure to accommodate, retaliation, wrongful termination, and constructive discharge (in the alternative) under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. — that the Arbitration Agreement requires her to arbitrate.

There is no basis to relieve Liott of her contractual obligation to arbitrate. ***First***, the Arbitration Agreement contains an express delegation clause vesting the arbitrator — and not this Court — with exclusive authority to decide issues of enforceability, interpretation, and arbitrability, and it separately incorporates the American Arbitration Association's Employment Arbitration Rules, which independently commit gateway questions to the arbitrator. ***Second***, the Agreement is a valid, enforceable contract under Pennsylvania law, and federal courts have enforced comparable Citizens' arbitration agreements in the employment context on materially similar formation facts. ***Third***, each of Liott's five claims falls squarely within the Arbitration Agreement's broad coverage, and none within its narrowly enumerated exclusions. ***Fourth***, under Section 3 of the Federal Arbitration Act, this Court is required to stay these proceedings pending arbitration; controlling Supreme Court, Third Circuit, and Eastern District authority makes clear that a stay — not dismissal — is the mandatory remedy when a party requests one.

Citizens respectfully requests that the Court enter an order (i) compelling Plaintiff to arbitrate her claims in accordance with the Arbitration Agreement, and (ii) staying these proceedings pending completion of arbitration.

## II. STATEMENT OF FACTS

### A. Liott's Employment and Her Agreement To Arbitrate

Liott joined Citizens on written terms that expressly required her to arbitrate — not litigate — the very kinds of employment disputes she now presents in this Court. On July 19, 2022, Citizens extended Liott a written offer for the position of Citizens Teller – In-Store, based in Bensalem, Pennsylvania and paying an hourly rate of $19.50. (*See* Declaration of Joel Barras, Esq. ("Barras Decl.") ¶ 6, Exhibit B (the "Offer Letter") at 1). The Offer Letter was unambiguous about the condition attached to Liott's employment:

> This offer is contingent upon your acceptance of Citizens' Mutual Agreement to Arbitrate Employment-Related Disputes, a copy of which is included in the pre-onboarding documents that will be available to you within 48 hours of accepting this offer electronically and before your first day of work. If you would like a copy of this Agreement prior to your acceptance of this job, please let me know and I will send you a copy

(Barras Decl., Ex. B at 5). Liott electronically accepted Citizens' offer on July 20, 2022 at 2:46 PM Eastern Time — with her acceptance timestamp and IP address captured on the face of the Offer Letter itself — and reported to work on or about August 1, 2022. (*See* Compl. ¶ 9; Barras Decl. ¶ 7, Ex. B at 5).

Since May 18, 2018, Citizens has maintained a Mutual Agreement to Arbitrate Employment-Related Disputes with its workforce and, from that date forward, has conditioned all offers of employment on the applicant's acceptance of the Agreement. (Barras Decl. ¶¶ 2-3, Exhibit A (the "Arbitration Agreement"); Ex. A § 18). The Arbitration Agreement is a comprehensive, mutual, and — by its own terms — federally-governed dispute-resolution instrument. The parties to the Arbitration Agreement expressly intended it to govern, "to the greatest extent permitted by law, the resolution of all covered disputes, claims and any other matters arising out of or relating to their employment relationship or termination of that relationship." (Barras Decl., at Ex. A § 1). And they agreed in Section 1 that "[t]he enforceability of this Agreement shall be governed by the Federal Arbitration Act." (*Id*. at Ex. A § 1). Section 1 requires the parties to arbitrate:

> any claim, complaint, or dispute related to the Colleague's employment with Citizens and not expressly excluded by this Agreement, regardless of the legal theory, . . . to be held within fifty (50) miles of the Colleague's primary work location with Citizens and administered by the American Arbitration Association ("AAA") in accordance with AAA's Employment Arbitration Rules ("Rules"), as revised by this Agreement.

(*Id*. at Ex. A § 1). Section 1 also commits threshold questions to the arbitrator, and not to any court: "The Arbitrator, and not any federal, state, or local court, or agency, shall have exclusive authority

to resolve any dispute relating to the enforceability or interpretation of this Agreement and the arbitrability of disputes between the Parties." (*Id.*). The scope of the Arbitration Agreement is expansive by design. It:

> covers all grievances, disputes, claims, or causes of action ("claims") that otherwise could be brought in a federal, state, or local court or agency under applicable federal, state, or local laws, arising out of or relating to the Colleague's employment with Citizens and/or the termination thereof . . . . The claims covered by this Agreement include, but are not limited to, . . . claims for wrongful termination (constructive or actual), claims for discrimination or harassment, [and] claims for violation of any federal, state, local or other governmental law, statute, regulation, or ordinance.

(*Id*. at Ex. A § 2). The Arbitration Agreement's carve-outs, by contrast, are narrow and enumerated: sexual harassment, sexual assault, and Equal Pay Act violations; workers' compensation and unemployment compensation matters; and disputes required to be arbitrated under FINRA rules. (*Id*. at Ex. B § 3). None of those carve-outs are implicated by the race-discrimination and retaliation claims Liott asserts here. Section 14, in turn, places the economic burden of arbitration on Citizens: Citizens pays the arbitrator's fees and AAA's administrative fees, and Liott's own out-of-pocket cost is capped at a filing fee not to exceed the amount she would pay to bring suit in the state court of her primary work location. (*Id*. at Ex. A § 14).

As to the mechanics of acceptance, the Agreement draws a clear line at May 18, 2018. For everyone hired on or after May 18, 2018, the mechanism of acceptance is direct: "all offers of employment extended by Citizens on or after May 18, 2018 are conditioned on the Colleague's acceptance of this Agreement." (*Id*. Ex. A § 18). Liott's acceptance of the Arbitration Agreement, as hired in 2022, was therefore acceptance via her acceptance of employment with Citizens. Indeed, Liott's Offer Letter was expressly so conditioned, Ex. B at 5, and no separate signature on the Arbitration Agreement was required. (*Id*., at Ex. B at 5; Ex. A at § 18). By accepting Citizens' offer

and beginning her employment on August 1, 2022, Liott accepted the Arbitration Agreement in precisely the form the Agreement itself prescribes.

Liott then reaffirmed her acceptance of the Arbitration Agreement over the course of her employment. Citizens requires all of its employees, as a condition of their continued employment, to complete an annual Business Conduct and Ethics training course, in connection with which each employee is provided a copy of the then-current Arbitration Agreement and, at the conclusion of the course, is required to complete an Ethics Attestation certifying — as Question 8.1 requires — that the employee has read the Mutual Agreement to Arbitrate Employment-Related Disputes and understands that it applies to him or her. (Barras Decl. ¶¶ 4, 9, Ex. D). Liott's training records confirm that she completed the Business Conduct and Ethics course on both occasions during her employment on which the training was administered — on October 19, 2022 (the 2022 annual cycle, completed within her first three months of employment) and on February 3, 2023 (the 2023 annual cycle) — receiving a perfect score of 100 on each. (*Id.* ¶ 8, Ex. C). A score of 100 confirms that Liott responded "Agree" to each of the certifications on the Ethics Attestation on both occasions, including the certification that she had read the Arbitration Agreement and understood that it applied to her. (*Id.* ¶¶ 9–10, Exs. C, D). Citizens issued Liott a Certificate of Achievement upon each of those completions. (*Id.* ¶ 10, Ex. E). At no point during her employment did Liott seek to revoke, withdraw from, or challenge the Arbitration Agreement, and Citizens has no record of any opt-out request from her. (*Id.* ¶ 11).

Liott's employment with Citizens ended on or about December 1, 2023. (Compl. ¶ 25). Liott filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (Charge No. 530-2024-02122), and the EEOC issued a Notice of Right to Sue on January 27, 2026. Then, on April 27, 2026 — nearly four years after she first accepted the Arbitration Agreement — Liott filed this action *pro se*, in contravention of the terms of the Arbitration Agreement. Her

Complaint asserts five causes of action, each grounded in allegations of disability-based discrimination and retaliation arising from her employment and its termination: disability discrimination under the Americans with Disabilities Act (Count I); failure to accommodate under the ADA (Count II); retaliation under the ADA (Count III); wrongful termination (Count IV); and, in the alternative, constructive discharge (Count V). (Compl., Counts I–V). Liott pleads no claim for sexual harassment, sexual assault, or violation of the Equal Pay Act. Although her Complaint references her April 2023 workplace injury and workers' compensation claim (Compl. ¶ 11) and a subsequent denial of unemployment benefits (Compl. ¶¶ 28–29), she does not sue for benefits under either program — the Section 3 workers' compensation and unemployment carve-outs are therefore not implicated by any claim she actually asserts. Each of her five claims is precisely the kind of "claim for wrongful termination (constructive or actual)," "claim for discrimination or harassment," and "claim for violation of any federal, state, local or other governmental law, statute, regulation, or ordinance" that Section 2 of the Arbitration Agreement commits to binding arbitration.

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") establishes a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[W]hen a plaintiff's complaint asserts claims that the parties agreed to arbitrate, the court must compel arbitration of those claims upon motion by the defendant." 9 U.S.C. § 3.

The FAA applies to "contract[s] evidencing a transaction involving commerce." 9 U.S.C. § 2. That standard "ordinarily signal[s] the broadest permissible exercise of Congress' Commerce

Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). The FAA applies here because the Arbitration Agreement expressly so states, and because it was entered into between a Pennsylvania resident and a national banking association headquartered in Rhode Island that conducts business in numerous jurisdictions across the country. (Barras Decl, at ¶ 1; Compl. ¶¶ 1–4); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (FAA applies to employment contracts affecting interstate commerce).

In the Third Circuit, "[w]hen it is apparent, based on the face of the complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks omitted); *see also Silfee v. Auto Data Processing, Inc.*, 696 F. App'x 576, 578 (3d Cir. 2017); *Doe v. Darden Restaurants, Inc.*, Civ. No. 3:20-CV-00862, 2022 WL 265949, at *2 (M.D. Pa. Jan. 27, 2022). And this Court may consider the terms of the Arbitration Agreement even though Liott did not reference it in her Complaint. *See Benedict v. Guess, Inc.*, Civ. Act. No. 5:20-cv-4545, 2021 WL 37619, at *4 (E.D. Pa. Jan. 5, 2021) ("[A]lthough Plaintiff's Complaint makes no mention of the arbitration agreement, that fact does not foreclose operation of a Rule 12(b)(6) standard."). Finally, a defendant may file a motion to compel arbitration in lieu of an answer. *See, e.g., Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 83 (2000) ("[i]n lieu of an answer, petitioners filed a motion to compel arbitration, to stay the action, or, in the alternative, to dismiss").

To prevail on a motion to compel arbitration where the parties have not delegated arbitrability, the movant must show only two things: "(1) that a valid agreement to arbitrate exists, and (2) that the dispute in question falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 527 (3d Cir. 2009); *see also Rite Aid of Pa., Inc.*

*v. United Food & Commercial Workers Union, Local 1776*, 595 F.3d 128, 131 (3d Cir. 2010). Where, as here, the parties have expressly delegated arbitrability to the arbitrator, the Court's inquiry is narrower still: it may look only to whether a valid arbitration agreement exists. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529–30 (2019). Any doubts are resolved in favor of arbitration. *First Liberty Inv. Grp. v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir. 1998).

## IV. LEGAL ARGUMENT

Every question raised by Liott's Complaint is one the parties agreed — at hire, and reaffirmed thereafter — to submit to an arbitrator, not to this Court. That result follows for three independent reasons. First, the Arbitration Agreement's express delegation clause and its incorporation of the AAA Employment Arbitration Rules commit gateway questions of enforceability, scope, and arbitrability to the arbitrator — and this Court's inquiry can and should end there. Second, if the Court were nevertheless to reach the merits, the Agreement is valid under Pennsylvania contract law on undisputed facts and covers every claim Plaintiff pleads. Third, once arbitrability is found, FAA § 3 leaves the Court no discretion: it must stay these proceedings pending the outcome of that arbitration.

### A. The Arbitrator, Not This Court, Must Decide Every Threshold Question

"Arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Where the parties have committed threshold questions to an arbitrator, "a court may not override the contract" — even if the court believes an arbitrability argument is "wholly groundless." *Id.* at 528–29.

Liott's Arbitration Agreement contains such a commitment, expressly and up front. Section 1's very first paragraph provides that "[t]he Arbitrator, and not any federal, state, or local court, or agency, shall have exclusive authority to resolve any dispute relating to the enforceability or

interpretation of this Agreement and the arbitrability of disputes between the Parties." (Barras Decl. at Ex. A § 1) (emphasis added). That language, standing alone, disposes of every threshold argument Liott might raise — from formation to scope to unconscionability — before this Court can consider it. See *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("unless [the plaintiff] challenged the delegation provision specifically, we must treat it as valid . . . and must enforce it," leaving "any challenge to the validity of the Agreement as a whole" for the arbitrator). Liott has no basis to challenge the delegation provision specifically. The provision could not be clearer, is set out in plain text alongside every other operative term, and — like the rest of the Arbitration Agreement — is supported by mutual consideration. Under *Rent-A-Center*, that is the end of the analysis.

The Arbitration Agreement removes gateway questions from this Court a second time, and independently, by incorporating the AAA's Employment Arbitration Rules. (Barras Decl., at Ex. A § 1). Rule 6(a) of those rules empowers the arbitrator "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." *See* AAA Empl. R. 6(a). "Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746 (2016) (*quoting Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases)). Either provision commits Liott's threshold challenges to the arbitrator. Together, they leave no room for judicial resolution of those questions. The Court's inquiry should end at delegation.

### B. Even If The Court Looks Past Delegation, The Agreement Is Valid Under Pennsylvania Law

Should the Court consider the Arbitration Agreement's validity itself — it need not — Liott and Citizens indisputably formed a binding contract under Pennsylvania law. Pennsylvania requires only (i) a manifestation of intent to be bound, (ii) definite terms, and (iii) consideration. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009). Each element is met on undisputed facts.

The touchstone of Pennsylvania contract-formation is "not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior." *Id*. Liott manifested that intent unequivocally, in three separate ways. She accepted a written offer whose page 5 expressly stated it was "contingent upon [her] acceptance of Citizens' Mutual Agreement to Arbitrate Employment-Related Disputes," and she electronically executed that acceptance on July 20, 2022 at 2:46 PM Eastern Time — with her acceptance timestamp and IP address captured on the face of the Offer Letter itself. (Barras Decl., at Ex. B at 5). She then began working for Citizens on August 1, 2022 — precisely the act that Section 18 of the Agreement identifies as acceptance for post-May 2018 hires. (Barras Decl., at Ex. A § 18). And she completed Citizens' annual Business Conduct and Ethics training in each of the two annual training cycles that occurred during her employment — on October 19, 2022 and February 3, 2023 — with Citizens providing a copy of the Arbitration Agreement in connection with each training. On both occasions, Liott achieved a perfect score of 100 on the training and its accompanying Ethics Attestation, in which she certified — in response to Question 8.1 — that she had read the Mutual Agreement to Arbitrate Employment-Related Disputes and understood that it applied to her. (Barras Decl. ¶¶ 8–10, Exs. C, D, E). A reasonable person could reach only one conclusion from that pattern: Liott intended to be bound.

Nor is the absence of a discrete signature on the Arbitration Agreement itself a barrier to enforcement. Under Pennsylvania law, signatures are not required to form a binding contract

"unless such signing is expressly required by law or by the intent of the parties." *Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd.*, 559 Pa. 56, 63, 739 A.2d 133, 136 (1999). Neither condition is present here: the Arbitration Agreement does not require a signature, and Section 18 instead provides that acceptance of Citizens' offer of employment is acceptance of the Arbitration Agreement for post-May 2018 hires. (Barras Decl., at Ex. A § 18). The FAA itself requires only that the agreement be written, not that it be signed. 9 U.S.C. § 2. Consistent with these principles, courts in this Circuit have "unwaveringly held that continued job performance is a valid method of accepting an agreement to arbitrate in lieu of a signature," *Keller v. Pfizer, Inc.*, No. 1:17-CV-1883, 2018 WL 5841865 (M.D. Pa. Nov. 8, 2018), and that an employee "may lawfully agree to an arbitration agreement contained in an employee hiring packet or training module . . . by continued employment rather than a physical signature," *Doe v. Darden Rests., Inc.*, No. 3:20-CV-00862, 2022 WL 265949 (M.D. Pa. Jan. 27, 2022) (collecting cases); *see also Juric v. Dick's Sporting Goods, Inc.*, 2020 WL 4450328, at *4 (W.D. Pa. 2020). Liott's acceptance of Citizens' offer, her commencement of work on August 1, 2022, her continuous employment through December 1, 2023, and her successive written certifications during her employment that she had read and agreed to the Arbitration Agreement are far more than the Third Circuit requires to bind her.

Nor can Liott meaningfully dispute that Citizens made the Arbitration Agreement available to her. In this Circuit, an employer's contemporaneous business records showing that notice of an arbitration policy was provided to the employee create a presumption of receipt, and an employee's later "no recollection" is not enough to rebut that presumption. *See Stephenson v. AT&T Servs., Inc.*, No. 21-0709, 2021 WL 3603322 (E.D. Pa. Aug. 13, 2021) (extending the traditional presumption of delivery to arbitration policies transmitted by email; plaintiff's inability to recall receiving the policy did not defeat arbitration where the employer's records confirmed

transmission); *Petrel v. Saber Healthcare Holdings, LLC*, No. 2:24-cv-765, 2025 WL 1330117 (W.D. Pa. May 7, 2025) ("Plaintiff's inability to remember whether she affixed her electronic signature to the Agreement does not raise an issue of material fact as to whether she assented to the Arbitration Agreement."). This record goes well beyond that presumption — it establishes Liott's own affirmative certification. In connection with each of the two annual Business Conduct and Ethics trainings she completed during her employment (on October 19, 2022 and February 3, 2023), Liott was provided a copy of the Arbitration Agreement and was required to complete an Ethics Attestation containing multiple certifications. On both occasions, she achieved a perfect score of 100 on that Attestation — meaning she answered "Agree" to every certification, including the specific certification at Question 8.1 that she "ha[d] read the Mutual Agreement to Arbitrate Employment-Related Disputes and underst[oo]d that it applie[d] to [her]." (Barras Decl. ¶¶ 4, 8–10; Exs. C, D, E). There is accordingly no factual predicate — much less a triable one — for any challenge based on receipt or notice.

Federal courts have enforced Citizens' arbitration agreements in the employment context on materially similar facts. In *Hudak v. Citizens Bank, N.A.*, No. 4:23-cv-40007-RGS (D. Mass. Feb. 10, 2023), the District of Massachusetts enforced the same 2020 form of the Arbitration Agreement Liott accepted here, on materially indistinguishable formation facts — a post-May 2018 hire whose offer letter conditioned employment on acceptance and who thereafter completed annual Business Conduct and Ethics training and Ethics Attestations. (*See* Declaration of Dawn M. Peacock ("Peacock Decl.") ¶ 2, Ex. A). And in *Lohm v. Citizens Securities, Inc.*, No. 2:20-cv-01504-NBF (W.D. Pa. Dec. 11, 2020), the Western District of Pennsylvania compelled arbitration under a Citizens arbitration agreement containing the same operative delegation and scope provisions. (Peacock Decl. ¶ 3, Ex. B). Both courts, on formation facts no stronger than those before this Court, compelled arbitration.

Next, the Arbitration Agreement identifies the parties (Citizens and each Colleague), enumerates the covered claims and the narrow excluded categories, designates the forum (AAA under its Employment Arbitration Rules) and the seat (within fifty miles of the Colleague's primary work location), and specifies cost allocation, procedural rules, and choice of substantive law. (Barras Decl., at Ex. A §§ 1–15). There is nothing indefinite about it. See *Davis v. Cintas Corp*., No. 2:18-cv-01200, 2019 WL 2223486, at *5 (W.D. Pa. May 23, 2019) (arbitration agreement definite where it enumerated the covered claim types, "including . . . claims brought pursuant to state-law anti-discrimination statutes, such as the PHRA").

The Arbitration Agreement is supported by consideration on two independent theories. First, Section 17 expressly identifies the consideration: "the Parties' mutual promise to arbitrate covered disputes and the Colleague's continued at-will employment with Citizens." (Barras Decl., at Ex. A § 17). Second, Liott's continued employment through December 1, 2023 independently supplies consideration under Third Circuit law. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."); *Bracy v. Macy's Retail Holdings, Inc*., No. 19-3825, 2020 WL 1953647, at *7 (E.D. Pa. Apr. 23, 2020) ("Under Pennsylvania law, continued employment after receiving notice of an arbitration policy is sufficient to establish acceptance of, as well as consideration for, an arbitration agreement.").

The stock validity challenges Plaintiff might attempt — unconscionability, cost-shifting, class-waiver — do not survive contact with this Agreement. Rent-A-Center forecloses generalized attacks on the Agreement as a whole in light of the delegation clause discussed above, 561 U.S. at 72, and the Arbitration Agreement's own cost provisions — under which Citizens pays the arbitrator's fees and AAA's administrative fees, with Liott's out-of-pocket cost capped at what she would pay to file suit in state court, (Barras Decl. at Ex. A § 14) — foreclose the classic cost-based

unconscionability attack. Nothing about this record — an adult employee who was expressly offered the Agreement before accepting employment, invited to request an advance copy of it, and reaffirmed it in the annual trainings required during her employment — supplies a factual predicate for any of those attacks.

### C. Every Claim In Liott's Complaint Falls Within The Agreement's Scope

The FAA "creates a body of federal substantive law of arbitrability" under which "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *First Liberty Inv. Grp. v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir. 1998) (internal quotation marks omitted). The Court need not indulge any doubt here. Liott's five claims sit squarely within the plain text of the Agreement. Section 2 of the Arbitration Agreement covers "all grievances, disputes, claims, or causes of action . . . arising out of or relating to the Colleague's employment with Citizens and/or the termination thereof," and expressly includes "claims for wrongful termination (constructive or actual), claims for discrimination or harassment, [and] claims for violation of any federal, state, local or other governmental law, statute, regulation, or ordinance." (Barras Decl., at Ex. A § 2). That description captures every count in the Complaint:

- **Count I (ADA — Disability Discrimination).** ADA discrimination claims are routinely arbitrated under agreements of this kind. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001) (FAA applies to employment contracts affecting interstate commerce). Liott's Count I is a "claim for discrimination or harassment on the basis of . . . disability" expressly covered by Section 2. (Barras Decl., Ex. A § 2).

- **Count II (ADA — Failure to Accommodate).** Liott's failure-to-accommodate claim is likewise within Section 2's plain text — it is a "claim for violation of any federal . . . law, statute, [or] regulation." (Barras Decl., Ex. A § 2).

- **Count III (ADA — Retaliation).** Liott's retaliation claim under the ADA is another "claim for violation of any federal . . . law, statute, [or] regulation" within Section 2's scope. (Barras Decl., Ex. A § 2).

- **Counts IV and V (Wrongful Termination and Constructive Discharge).** Section 2 expressly designates "claims for wrongful termination (constructive or actual)" as covered by the Arbitration Agreement. (Barras Decl., Ex. A § 2). Both Count IV (wrongful

termination) and Count V (constructive discharge, pleaded in the alternative) fall precisely within that enumerated category — indeed, in language that mirrors it.

The Arbitration Agreement Section 3 carve-outs do not save any of Liott's five claims from arbitration. That provision reaches only sexual harassment, sexual assault, and Equal Pay Act violations; workers' compensation and unemployment matters; and disputes required to be arbitrated under FINRA. (Barras Decl., at Ex. A § 3). Although Liott's Complaint references her April 2023 workplace injury and workers' compensation claim (Compl. ¶ 11) and the subsequent denial of unemployment benefits (Compl. ¶¶ 28–29), those references are factual background — Liott does not sue for workers' compensation benefits or unemployment benefits, and the Section 3 carve-outs are therefore not implicated by any claim she actually asserts. Nor does the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, 9 U.S.C. §§ 401–402, provide a route around the Agreement: that statute voids pre-dispute arbitration agreements only "with respect to a case which . . . relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a). Liott's Complaint does not plead a sexual assault or sexual harassment dispute — it pleads disability discrimination, failure to accommodate, retaliation, wrongful termination, and constructive discharge. (Compl., Counts I–V).

### D. The Court Must Stay These Proceedings Pending Arbitration

Once the Court concludes that Liott's claims are arbitrable, only one remedy is available: a stay pending arbitration. The Supreme Court held unanimously in *Smith v. Spizzirri* that "when a district court finds that a lawsuit involves an arbitrable dispute, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the ground that all the claims are subject to arbitration." 601 U.S. 472, 475–76 (2024). The text of the FAA is unambiguous: "the court . . . shall on application of one of the parties stay the trial of the action" until arbitration is complete. 9 U.S.C. § 3. Citizens applies for that stay here.

That result is not only consistent with, but long compelled by, Third Circuit authority. Two decades ago in *Lloyd v. HOVENSA, LLC*, the Third Circuit held that "the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." 369 F.3d 263, 269 (3d Cir. 2004). The Third Circuit reaffirmed that rule in *Quilloin v. Tenet HealthSystem Philadelphia, Inc*., 673 F.3d 221, 227 (3d Cir. 2012), and again — post-*Spizzirri* — in *Cornelius v. CVS Pharmacy Inc*., 133 F.4th 240, 246 (3d Cir. 2025) (holding that even where a defendant moves for dismissal in the alternative, the district court must stay because "the FAA does not provide for dismissal as a remedy" when a stay is requested).

Courts in this District have applied that rule uniformly. *See e.g*., *Kitchengs v. Cintas* Corp. No. 2, 759 F. Supp. 3d 562, 574 (E.D. Pa. 2024) (staying proceedings and citing *Lloyd* and *Spizzirri*); *Curtis v. Cintas Corp*., 229 F. Supp. 3d 312, 322 (E.D. Pa. 2017) (dismissal not permitted when a stay is requested); *Hopkins v. New Day Fin*., 643 F. Supp. 2d 704, 719 (E.D. Pa. 2009) ("the FAA mandates a district court to stay litigation upon granting a motion to compel arbitration"). The Court should follow the same path here.

## V. CONCLUSION

For the foregoing reasons, Citizens respectfully requests that this Court enter an order (i) compelling Plaintiff Liott to arbitrate all of the claims asserted in her Complaint, and (ii) staying these proceedings pending the completion of that arbitration.

Dated: August 11, 2026

Respectfully submitted,

**POLSINELLI PC**

By: *<u>/s/ Valerie E. Brown</u>*

Valerie E. Brown (PA Bar No. 309849)
Dawn M. Peacock PA Bar No. 336977)
1717 Arch Street, Suite 1200
Philadelphia, PA 19103
Telephone: (215) 267-3001
Facsimile: (215) 267-3002
Valerie.brown@polsinelli.com
dpeacock@polsinelli.com

***Attorneys for Defendant Citizens Bank, N.A.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 11th day of August, 2026, a true and correct copy of the foregoing was served via first-class U.S. mail and email upon pro se Plaintiff Diana J. Liott at 2555 Old Trevose Rd., Apt. L5, Feasterville-Trevose, PA 19053, and via the Court's CM/ECF system upon all attorneys of record.

*<u>/s/ Valerie E. Brown</u>*
Valerie E. Brown